Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| CONDADO HOTEL OWNERS, LLC<br><br>Apelante<br><br>v.<br><br>DUO CONDADO JV HOLDINGS, LLC; RAFAEL CEDEÑO PAULSON; ROLANDO PADUA; FULANO DE TAL<br><br>Apelados | KLAN202400667 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso número: SJ2024CV00216<br><br>Sobre: *Injunction* Estatutario, Ley General de Corporaciones |

Panel integrado por su presidente, el juez Bermúdez Torres, el juez Adames Soto y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 18 de febrero de 2025.

Comparece la parte apelante, Condado Hotel Owners, LLC, y nos solicita que revoquemos la *Sentencia* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 9 de mayo de 2024. Mediante dicho dictamen, el foro primario declaró No Ha Lugar la solicitud de *injunction* estatutario promovida por la parte apelante. En consecuencia, el foro apelado desestimó y archivó la acción de epígrafe.

Por los fundamentos que exponemos a continuación, se confirma el dictamen apelado.

## I

El 10 de enero de 2024, Condado Hotel Owners, LLC (CHO o apelante) incoó una *Demanda y Solicitud de Injunction Estatutario* sobre sentencia declaratoria e *injunction* estatuario bajo el Artículo 19.20 de la Ley General de Corporaciones, Ley Núm. 164-2009, según enmendada, 14 LPRA sec. 3970, contra Duo Condado JV Holdings, LLC (Duo Condado), Rafael Cedeño Paulson (Cedeño

Paulson) y Rolando Padua (Padua) (apelados).[1] En síntesis, alegó que Duo Condado es una compañía que controla y opera los hoteles Vanderbilt Hotel y La Concha, así como el Casino del Mar en este último, entre otros negocios. Adujo que, conforme al *Limited Liability Company Agreement* del 10 de marzo de 2014, los miembros de la compañía de responsabilidad limitada, Duo Condado, eran Paulson PRV Holdings, LLC (Paulson PRV) y Condado Hotel Investors S.E. (CHI). Arguyó que, Paulson PRV y CHI eran los únicos miembros de Duo Condado hasta que, el 1 de enero de 2021, CHO suscribió un *Membership Interest Purchase Agreement* con CHI en donde esta última le concedió el cien por ciento (100%) de su participación titular; es decir, un *Membership Interest* del siete punto seis por ciento (7.6%) sobre Duo Condado por la cantidad de siete millones de dólares ($7,000,000.00). Sobre dicho acuerdo, CHO alegó en la acción de epígrafe que los comparecientes, CHI y CHO, estipularon que este adquiría la titularidad del *Membership Interest* libre de toda carga o restricción.

Según alegó, al considerarse miembro, el 30 de octubre de 2023, le cursó un requerimiento de información a Duo Condado al amparo del Artículo 19.20 de la Ley de Corporaciones de Puerto Rico. En particular, le solicitó estados financieros (incluyendo Estado de Situación, Estado de Ingresos y Gastos y Estado de Flujos de Efectivo del 1 de julio de 2023 en adelante); Estados bancarios mensuales desde el 1 de julio de 2023; un informe detallado sobre las "cuentas 95" donde los hoteles contabilizan los gastos complementarios o gratuitos; las distribuciones de dividendos para

---

[1] Apéndice del recurso, págs. 1-13. Junto a este escrito, CHO presentó los siguientes documentos: (1) *Limited Liability Company Agreement of Condado Hotel Owners LLC*, con fecha del 16 de diciembre de 2020; (2) *Membership Interest Purchase Agreement*; (3) *Request for Information Under Article 19.20 of Puerto Rico's General Corporation Act*, con fecha del 30 de octubre de 2023; (4) *Request for Information from Duo Condado JV Holdings, LLC*, con fecha del 3 de noviembre de 2023; (5) *Request for Information Under Article 19.20 of Puerto Rico's General Corporation Act Duo Condado JV Holdings, LLC*, con fecha del 7 de noviembre de 2023. Véase, Apéndice del recurso págs. 14-64.

los trimestres del año 2023; y cualquier otro pago que se le debiera a Fahad Ghaffar (Ghaffar) -miembro de CHO- como parte de *cierto Special Payment Letter* firmada el 23 de abril de 2019. Indicó que, el 3 de noviembre de 2023, Duo Condado respondió la mencionada misiva negándole acceso a la información solicitada bajo el fundamento de que existía controversia entre las partes firmantes en el *Membership Interest Purchase Agreement* en torno al pago de ciertos dividendos. Indicó, además, que Duo Condado se niega a reconocerle la titularidad, membresía y todos los derechos que adquirió en dicha entidad. Señaló que, en respuesta, el 7 de noviembre de 2023, reiteró su solicitud para que Duo Condado le proveyera la información solicitada, pero este no la suministró. Por tal razón, CHO solicitó que se le suministrara la información solicitada y que se dictara sentencia reconociéndolo como miembro capital y titular de Duo Condado, con derecho a disfrutar de la totalidad de los derechos, intereses y titularidad en dicha entidad.

Posteriormente, el 31 de enero de 2024, Duo Condado, Cedeño Paulson y Padua instaron una *Moción de Desestimación y en Cumplimiento de Orden de Mostrar Causa*.[2] En esencia, alegaron que CHO no había sido admitido como miembro de Duo Condado, pues conforme al *Limited Liability Company Agreement,* para admitir a un miembro adicional o sustituto a la compañía es necesario que exista el consentimiento unánime y por escrito de todos los miembros existentes y que se enmiende dicho documento para reflejar la admisión de un nuevo miembro. Adujeron que, lo adquirido por CHO de CHI en el *Membership Interest Purchase Agreement* fue un interés económico de siete punto seis por ciento (7.6%) respecto a Duo

---

[2] Apéndice del recurso, págs. 103-126. La parte apelada acompañó su moción con los siguientes documentos: (1) *Moción de Desestimación y en Cumplimiento de Orden de Mostrar Causa,* con fecha del 31 de enero de 2024; (2) *Limited Liability Company Agreement of Duo Condado JV Holdings, LLC,* con fecha del 10 de marzo de 2014; (3) *Demanda,* con fecha del 9 de octubre de 2023. Véase, Apéndice del recurso págs. 127-220.

Condado, pero ello no le otorgó a CHO un derecho a ser miembro de Duo Condado. Al CHO no haber sido admitido como miembro de Duo Condado, arguyeron que este no tenía derecho a acceder a la información corporativa de Duo Condado.

En desacuerdo, el 12 de febrero de 2024, CHO se opuso.[3] En síntesis, reafirmó que había adquirido un *Membership Interest* mediante el *Membership Interest Purchase Agreement,* lo que incluyó la totalidad de los derechos, títulos e intereses que poseía CHI sobre Duo Condado. Alegó, además, que la intención de las partes en el referido acuerdo era para que este obtuviera todos los derechos y beneficios como miembro pleno, incluyendo su derecho de acceso a los libros de Duo Condado. CHO arguyó que su admisión como miembro de Condado se cumplió en su totalidad, más aún cuando el propio Duo Condado compareció en el *Membership Interest Purchase Agreement* para ratificar el negocio jurídico sin ambages o condiciones. De igual forma, adujo que Paulson PRV, mediante diferentes comunicaciones por correo electrónico, confirmó su estatus de miembro en Duo Condado. Por otro lado, arguyó que el requerimiento de información sobre Duo Condado es uno limitado a tener un cuadro claro sobre la situación financiera de Duo Condado.

Luego de varios incidentes procesales y celebrado el juicio en su fondo, el 9 de mayo de 2024 el Tribunal de Primera Instancia emitió y notificó la *Sentencia* que nos ocupa.[4] Mediante el aludido dictamen, el foro primario declaró No Ha Lugar la solicitud de *injunction* estatutario presentada por CHO, desestimando así la causa de acción incoada. En particular, el foro *a quo* desglosó las siguientes determinaciones de hechos:

> 1) La demandante Condado Hotel Owners[,] LLC ("Condado Hotel Owners") es una compañía de responsabilidad limitada organizada y autorizada a hacer negocios en Puerto Rico.

---

[3] Apéndice del recurso, págs. 226-244.
[4] Íd., págs. 483-518.

2) Condado Hotel Owners es una entidad administrada por el Sr. Fahad Ghaffar, quien es el *Managing Member* de la referida compañía.

3) Condado Hotel Owners tiene otro miembro, el Sr. Ibrahim Odeh.

4) Stuart Merzer es el asesor legal principal o *General Counsel* de las entidades relacionadas con Paulson & Co., y como tal, responde directamente al Sr. John Paulson desde Nueva York.

5) Merzer es responsable de la redacción y aprobación de documentos legales en Paulson & Co., la cual tiene múltiples inversiones, que incluyen negocios en varios países y en sectores como el de bienes raíces en Puerto Rico, a través de Paulson PRV Holdings[,] LLC, una entidad que agrupa todas las inversiones en Puerto Rico.

6) Paulson PRV Holdings[,[ LLC es una compañía de responsabilidad limitada con un solo miembro, Paulson Management IV, LLC, la cual está relacionada con el Sr. John Paulson.

7) El señor Ghaffar llegó a Puerto Rico en el 2012 y en el 2013 comenzó a trabajar con el señor Paulson en varios proyectos, tal como el Hotel St. Regis. También colaboró activamente con Paulson en la adquisición de los hoteles La Concha y Vanderbilt en Condado, dos de los hoteles principales en la zona turística de Condado.

8) Durante su relación laboral con el señor Paulson, al señor Ghaffar inicialmente se le pagó por horas de consultoría y, tras la adquisición de los hoteles La Concha y Vanderbilt por entidades relacionadas con Paulson, comenzó a recibir una participación en las ganancias de estos activos. Su responsabilidad abarcaba la supervisión de gerentes en diferentes áreas como construcción, oficinas y hoteles, y también se ocupaba de la contabilidad y otros asuntos gerenciales.

9) La demandada Duo Condado JV Holdings LLC[,] ("Duo Condado") es una compañía de responsabilidad limitada organizada y autorizada a hacer negocios en Puerto Rico, la cual fue creada por Paulson PRV Holdings, LLC y Condado Hotel Investors, SE ("CHI") con el propósito de controlar y operar el [h]otel La Concha y el Vanderbilt Hotel, así como el Casino del Mar en el [h]otel [L]a Concha y múltiples restaurantes.

10) El Presidente de CHI era el Sr. Hugh Andrews, quien también tenía una empresa conocida como International Hospitality Services (IHS)[,] que tenía el contrato de administración de estos hoteles.

11) Conforme al Acuerdo Operacional de Duo Condado como compañía de responsabilidad limitida (o su "Operating Agrement"), para el 10 de marzo de 2014[,] los miembros de la referida entidad eran Paulson PRV Holdings, LLC ("Paulson PRV"), la cual tenía el 92.402%

de interés de membresía; y Condado Hotel Investors[,] S.E. (CHI), la cual tenía el 7.598% de interés de membresía.

12) El Artículo 1 del Acuerdo Operacional define el concepto de "Miembro" de Duo Condado como "[t]he Persons who are members in the Company as provided in this Agreement and under the Act (including the Managing Member), such Persons being, on the date of this Agreement, the Persons listed as Members on Exhibit A (or such Persons' respective successors), and at any time thereafter those Persons (except for any thereof who cease to be members in the Company) and any other Person admitted as an additional or substitute member in the Company, in each case in accordance with this Agreement and the Act, each in its capacity as a member in the Company".

13) El Acuerdo Operacional también dispone que el miembro gerente (*Managing Member*) es "Paulson [PRV] or any Person that is appointed by Paulson, at its sole discretion, to act as the managing member of the Company as provided herein".

14) A su vez, el Acuerdo Operacional dispone que CHI o cualquier otra persona designada por Paulson, a su entera discreción, es el miembro administrador (*Administrative Member*).

15) Además, conforme al Acuerdo Operacional, Paulson PRV tiene amplios poderes para ejercer sus derechos de miembro gerente o *Managing Member* y tomar decisiones en el manejo y operación de Duo Condado, siempre que no sean contrarios al Acuerdo y el Certificado de Organización. No obstante, establece una serie de decisiones y asuntos que requieren el consentimiento unánime de todos los miembros como, por ejemplo, enmiendas al propio Acuerdo Operacional.

16) De otra parte, [l]a Sección 2.5 del Acuerdo Operacional provee para la admisión de miembros sujeto a un proceso de notificación y que se cumpla con lo dispuesto en el Artículo 12, en cuyo caso el *Managing Member* tendría que efectuar las enmiendas necesarias al Acuerdo Operacional y al registro de miembros para reflejar esa admisión.

17) A su vez, la Sección 12.6 del Acuerdo Operacional detalla el proceso en cuanto a la admisión de miembros sustitutos, lo que requiere el consentimiento escrito de todos los miembros.

18) Además, la Sección 6.3(c) del Acuerdo Operacional requiere el consentimiento unánime de todos los miembros para la expedición de derechos de participación o intereses adicionales de membresía ("the issuance of additional Membership Interests...").

19) Estos consentimientos pudieran constar en un correo electrónico a tenor [con] lo dispuesto en la Sección 17.1 del Acuerdo Operacional, la cual dispone

que "[a]ny notice, demand or other communication required or permitted to be given under this Agreement shall be in writing and shall be given to the Members at their respective addresses...Such notice may be delivered by hand, overnight courier, U.S. certified mail, facsimile or email".

20) Mientras que el Artículo 12 del Acuerdo Operacional establece ciertos límites y restricciones en cuanto a la venta, cesión o transferencia de los intereses o participación de membresía, en esta disposición se contempla expresamente la posibilidad de que un miembro de Duo Condado efectivamente transfiera o asigne una porción o la totalidad de sus intereses de membresía o participación de membresía ("Membership Interest") a otra persona sujeto a ciertas condiciones. No obstante, queda claro de esa misma disposición que el hecho de la transferencia, venta o cesión de estos derechos de participación o intereses de membresía no implica necesariamente que ese tercero que adquirió o recibió tales intereses de membresía se convierte automáticamente en miembro.

21) Específicamente, el inciso (c) de la [S]ección 12.5 reglamenta la manera en que esa persona pudiera disponer de sus intereses o participación de membresía, aun cuando no se le trate propiamente como un miembro de Duo Condado.

22) Más aún, el inciso (b) de la misma sección provee para que el miembro que vendió o transfirió la totalidad de sus intereses o participación de membresía retenga sus derechos estatutarios como miembro[,] aun después de ese negocio jurídico, hasta tanto se admita a un [m]iembro sustituto a la compañía.

23) Por último, resulta pertinente destacar que la Sección 12.2 del Acuerdo Operacional establece un proceso para la redención obligatoria de las participaciones o intereses de membresía de CHI en el supuesto de que el Contrato de Servicios de Administración del [h]otel La Concha y el Contrato de Servicios de Administración del Hotel Vanderbilt fueran terminados. En particular, Duo Condado estaría obligada, sin necesidad de aprobación de ningún [m]iembro, a redimir todas las [p]articipaciones de [m]iembro de CHI. Además, se dispuso que el precio total de redención de todos los Derechos de Participación de Miembro de CHI será la suma total equivalente a $7,000,000, pagadero en efectivo en la fecha de cierre. Además, se dispuso que, tras el pago de dicho precio de redención, CHI dejará de ser [m]iembro de la [c]ompañía y sus participaciones o intereses de membresía serán canceladas. Dicha redención obligatoria sería financiada con fondos disponibles de la [c]ompañía. Tras dicha redención, CHI no tendrá derecho a recibir ninguna distribución de Duo Condado.

24) Durante el 2020, ante la crisis provocada por el COVID-19 y la subsiguiente pérdida de ingresos, las

entidades asociadas con Paulson decidieron terminar el contrato de administración con IHS y Hugh Andrews, asumiendo directamente la administración de los hoteles para mejorar su rentabilidad. Según se desprende de la Sección 12.2 del Acuerdo Operacional antes reseñado, este cambio implicaba una compensación sustancial por terminación, típicamente requerida en la industria hotelera ante ese tipo de circunstancias, así como para redimir los intereses de participación de CHI en Duo Condado.

25) El señor Ghaffar fue quien promovió la transacción para que se diera ese cambio con el visto bueno del señor Paulson. La transacción implicaba adquirir los intereses de membresía de CHI en Duo Condado por $7 millones. Duo Condado adquiriría IHS por un dólar.

26) Inicialmente[,] se había vislumbrado que sería Duo Condado la entidad que compraría los derechos de participación o intereses de membresía de CHI con relación a la primera entidad, según surge del borrador del *Membership Interests Repurchase Agreement*.

27) Ante la cantidad sustancial que habría que pagarle a CHI para la terminación del contrato, el 11 de noviembre de 2020[,] el señor Ghaffar le escribió mediante correo electrónico al señor Paulson que tenían tres opciones de modo que Duo Condado no se quedara sin fondos por un periodo de dos a tres años: 1) Atrasar la transacción con CHI/Hugh Andrews; 2) que fuera el propio señor Paulson quien realizara la compra; o 3) que fuera el señor Ghaffar quien realizara los esfuerzos y sacrificios necesarios para realizar la compra. El señor Ghaffar expresó que esa tercera alternativa era su preferencia porque así estaría más comprometido o "vested" con el éxito del negocio.

28) Ese mismo día[,] el señor Paulson le contestó mediante correo electrónico al señor Ghaffar que era un gran negocio a $7 millones y que podía comprar lo que quisiera, aunque no vendería su casa para ello. Además, le preguntó si no le quedaban otros fondos luego de todas las distribuciones ("Its a great deal at 7. You can buy whatever you can although I wouldn't sell your house. Don't you have other funds after all the distributions?").

29) Finalmente, ese mismo día[,] Ghaffar le contestó por correo electrónico al señor Paulson que no vendería su casa principal, sino un *town house*; y que si lo necesitara, podría pedir prestados los últimos $2 millones al mismo amigo que es inversionista en esa casa. Finalmente, reafirmó que podía comprar la parte de Hugh Andrews en Duo Condado.

[*sic*]

31) Así las cosas, se determinó que sería Ghaffar, a través de Condado Hotel Owners, quien compraría el 7.6% de los derechos de participación o intereses de membresía de CHI; por lo que no se suscribiría el

*Membership Interest Repurchase Agreement* que se había preparado anteriormente (para que fuera la propia Duo Condado la entidad que le comprara directamente su participación a CHI/Hugh Andrews).

32) El señor Ghaffar gestionó los trámites necesarios y la permisología requerida para la transacción, incluyendo la autorización de la Oficina del Comisionado de Instituciones Financieras (OCIF), que supervisa el casino del hotel, y de la Compañía de Turismo de Puerto Rico. Además, procuró la aprobación del prestamista (Bank of America y Apollo) con respecto al cambio de dueño.

33) Para perfeccionar la transacción, también era necesario informar a Marriott, ya que La Concha es una franquicia de Marriott y requería que el administrador fuera cualificado, lo cual IHS cumplía al ser administrado por Hugh Andrews, quien poseía experiencia en la administración de múltiples hoteles.

34) Estos trámites se llevaron a cabo unos días antes del cierre de la transacción, asegurando que no hubiera problemas y procediendo con los cambios de dueño y administración propuestos.

35) El cierre de esta transacción involucraba la firma de múltiples documentos, tal como el *Stock Purchase Agreement* entre Travelers Hospitality Services y Condado Duo La Concha Casino SPV[,] LLC[.]

36) El señor Paulson, como *Managing Member* de Duo Condado, autorizó a Chris Bodak – quien es Chief Financial Officer de las entidades de Paulson– para firmar en nombre de la entidad debido a que era el per[i]odo de Navidad y no todos estaban disponibles para trabajar.

37) La transacción finalmente cerró el 1 de enero de 2021.

38) El 1 de enero de 2021, CHI suscribió un *Membership Interest Purchase Agreement* ("MIPA") con Condado Hotel Owners, mediante el cual la primera le cedió a la segunda compañía el cien por ciento (100%) de su intereses o participación de membresía en Duo Condado – equivalente a un porcentaje de interés de 7.598%– a cambio de un pago de $7,000,000.00.

39) A su vez, en el MIPA se estipuló que[,] en septiembre de 2020, varias entidades informaron a International Hospitality Services, Inc. ("IHS") sobre su intención de terminar ciertos acuerdos de administración de Hotel y Casino con respecto a La Concha y Vanderbilt, lo que activó los derechos de redención obligatoria bajo la referida Sección 12.2 del Acuerdo Operacional de Duo Condado y el pago de la suma de cancelación.

40) Además, Condado Hotel Owners y CHI acordaron vender el 100% de las acciones emitidas y en circulación de IHS a Condado Duo La Concha Casino SPV[,] LLC

("CDLCC") por una cantidad nominal, como parte de la consideración por la tarifa de terminación y por conveniencia de CDLCC como nuevo propietario de IHS. Se dispuso que esto permitiría que IHS continúe operando los hoteles y el casino bajo los términos de los Acuerdos de Gestión después de la venta.

41) Las partes también acordaron que los intereses de membresía o derechos de participación de CHI en Duo Condado serían comprados por Condado Hotel Owners, y[,] en ese momento[,] CHI cesaría de tener un interés propietario sobre Duo Condado ("Upon the sales and transfer of the Membership Interest to the Purchaser by the Redeeming Member, the Purchaser will take title to the Membership Interest, free and clear of any Lien…The Redeeming Member understands that, upon transferring the Membership Interest to the Company, it will no longer hold an ownership interest in the Company…").

42) El precio de compra acordado fue de $7,000,000.00. El cierre de la compraventa de los intereses de membresía se programó para el 1 de enero de 2021, con el precio de compra depositado en fondos disponibles de inmediato con McConnell Valdés, LLC como agente de *escrow*, para ser liberado el 5 de enero de 2021.

43) Condado Hotel Owners y CHI fueron las únicas partes contratantes en el MIPA. Estas entidades firmaron el contrato por conducto de Fahad Ghaffar, como Presidente de Condado Hotel Owners; y Hugh Andrews, como Presidente de CHI.

44) En la página de las firmas[,] Fahad Ghaffar también firmó el documento bajo el nombre de Duo Condado, para el cual se denominó como un "Authorized Representative".

45) No obstante, Duo Condado no era una parte compareciente en el MIPA.

46) Fahad Ghaffar tampoco estaba autorizado a firmar el documento en representación de Duo Condado. Ello así, pues independientemente de los reclamos de la parte demandante, no está en controversia que para la fecha en que se otorgó el MIPA, ni Condado Hotel Owners ni el señor Ghaffar eran miembros de Duo Condado.

47) Además, según explicó el señor Merzer, cuyo testimonio le mereció credibilidad al Tribunal, el señor Ghaffar no estaba incluido como firmante autorizado de Duo Condado para la fecha en que se llevó a cabo esa transacción.

48) No obstante, el señor Merzer no participó en la negociación ni en la estructuración del MIPA, del cual se enteró luego de su ejecución.

49) La referencia a Duo Condado en la página de firmas del MIPA se debió a un error oficinesco cometido por los

abogados de Ferraiouli[,] LLC que prepararon los documentos relacionados con esa transacción.

50) Como parte de esta transacción[,] también se otorgaron otros contratos, relevos y documentos entre las distintas entidades involucradas.

51) El bufete de Ferraiouli, LLC le aclaró al señor Ghaffar sobre el alcance de las firmas en los distintos documentos que se debían preparar, así como los consentimientos que debía firmar el señor Paulson para facultar al señor Ghaffar o al señor Bodak a firmar ciertos acuerdos y documentos relacionados con la entidad y sus subsidiarias relacionadas.

52) En todos estos consentimientos que debía firmar el señor Paulson se hizo referencia a [e]ste, en su capacidad de representante autorizado de Paulson PRV Holdings, LLC, como el *Managing Member* o *Sole Member* de Duo Condado y otras subsidiarias relacionadas.

53) El 8 de enero de 2021[,] el señor Ghaffar envió una comunicación escrita a Renaissance Hotel Holdings, Inc. para notificarle sobre el MIPA, según requerido por el *Franchise Agreement.* Esta comunicación fue firmada por el señor Ghaffar como representante autorizado de Duo Condado.

54) Mediante el MIPA, Condado Hotel Owners adquirió el 7.598% del interés económico de Duo Condado, con el visto bueno del señor Paulson y sus entidades relacionadas (y de ese modo Paulson PRV Holdings mantuvo el 92.402% del interés económico sobre Duo Condado).

55) No obstante, luego de que se suscribiera el MIPA y los demás documentos relacionados con esta transacción, no se enmendó el Acuerdo Operacional de Duo Condado ni se otorgó ningún documento particular que reconociera a Condado Hotel Owners como miembro de Duo Condado.

56) Tampoco surge de ningún documento, carta, correo electrónico o escrito intercambiado entre las partes que Condado Hotel Owners hubiese sido admitido como miembro de Duo Condado luego de que se otorgara el MIPA y de que Condado Hotel Owners adquiriera los derechos de participación o intereses de membresía que tenía previamente CHI en Duo Condado.

57) Aun así, y como parte del acuerdo con el señor Paulson, el señor Ghaffar administraría los hoteles a través de su acuerdo de ganancias del 10% con FG Hospitality. Ello se complementaba con el 7.59% de participación o intereses de membresía que Condado Hotel Owners obtuvo en Duo Condado mediante el MIPA.

58) Tras la referida transacción, se realizaron distribuciones de ingresos de Duo Condado donde el

señor Ghaffar, por conducto de entidades relacionadas a [e]ste, recibió un 7.59% del flujo de efectivo como parte de sus intereses de participación en la CRL y un 10% de las ganancias como gerente. Estas distribuciones fueron autorizadas por el señor Paulson.

59) Por ejemplo, el 16 de marzo de 2022[,] el señor Ghaffar le escribió por correo electrónico al señor Paulson para recomendar una distribución de $35 millones con relación a Duo Condado, lo cual fue autorizado por el señor Paulson también por correo electrónico de esa misma fecha.

60) Previo a dicha distribución, el 14 de marzo de 2022[,] el señor Ghaffar le escribió un correo electrónico a varios ejecutivos de Paulson a la [*sic*] cual anejó una tabla con las recomendaciones sobre cómo debían hacerse esas distribuciones.

61) En dicho anejo, titulado *Duo Condado & Condado Ocean Club - 2021 Cash Distributions*, se hace referencia al "equity" del señor Ghaffar en Duo Condado como equivalente al 7.598%, mientras que el "equity" del señor Paulson se mostraba como equivalente al 92.402%. También contiene ciertas recomendaciones de distribución por otros conceptos, incluyendo el referente al 10% que correspondía al señor Ghaffar por sus servicios y otros porcientos para el "back office" de la oficina de Paulson.

62) Ese mismo día, Eric Shin, quien es un ejecutivo o "comptroller" de las entidades asociadas con Paulson, contestó al correo electrónico del señor Ghaffar y anej[ó] una tabla –u *ownership table*– que fue revisada por el señor Bodak y aprobada por el señor Paulson el 14 de octubre de 2021. En dicha tabla se reflejaron los cambios en porciento de interés económico del "back office" y del señor Paulson en Duo Condado. Además, le solicitó al señor Bodak que confirmara que el porciento de titularidad u "ownership" no había cambiado desde el 14 de octubre de 2021.

63) El señor Bodak replicó por correo electrónico ese mismo día que no tenía comentarios y que[,] aun cuando no había conversado directamente con el señor Paulson sobre la aprobación, si el señor Shin lo había hecho debía ser suficiente.

64) Los porcientos de distribución de los ingresos de Duo Condado basados en los derechos de participación o intereses de membresía de distintas entidades – incluyendo a la demandante Condado Hotel Owners— que se hizo constar en el documento titulado *Duo Condado & Condado Ocean Club - 2021 Cash Distributions*, son consistentes con la información que surge de otras tablas sobre la organización de Paulson & Co. en Puerto Rico, tal como el Organizational Chart actualizada el 17 de enero de 2023.

65) El 16 de febrero de 2023, se realizaron cambios en una tabla de firmantes autorizados para uniformar las

firmas a través de todas las empresas asociadas y añadir el nombre del señor Ghaffar como firmante autorizado en algunas entidades donde previamente no lo era. Dichos cambios se efectuaron debido a la rápida expansión de las empresas relacionadas con Duo Condado y la necesidad de actualizar quién podía firmar qué, especialmente tras el suicidio de un socio y la renuncia de otros cuatro, quienes necesitaban ser removidos de la lista de firmantes autorizados.

66) Según explicó el señor Merzer, cuyo testimonio le mereció credibilidad al Tribunal, Merzer Paulson PRV Holdings podía permitir que Ghaffar se convirtiera en signatario autorizado mediante la enmienda del acuerdo operativo o mediante un consentimiento escrito para propósitos específicos.

67) En julio de 2023, el señor Paulson y las entidades relacionadas con dicho empresario dieron por terminada su relación de negocios y de índole laboral con el señor Ghaffar.

68) El 31 de julio de 2023, Paulson PRV Holdings LLC, como *Managing Member* de Duo Condado, firmó –por conducto de Stuart Merzer– un documento para remover al señor Ghaffar como firmante autorizando en dos subsidiarias de Duo Condado.

69) El 30 de octubre de 2023, Condado Hotel Owners envió, por conducto de su representación legal, un requerimiento de documentos con respecto a Duo Condado y varias subsidiarias de esa CRL en virtud del Artículo 19.20 de la Ley General de Corporaciones.

70) El 3 de noviembre de 2023, la representación legal de Duo Condado contestó dicho requerimiento mediante una carta en la que indicó que el Acuerdo Operacional de esa CRL nunca fue enmendado para reconocer a Condado Hotel Owners como miembro. Ante ello, le indicó que no podía ejercer los derechos asociados con la membresía, tal como la inspección de documentos.

71) El 7 de noviembre de 2023, la representación legal de Condado Hotel Owners le dirigió otra carta a Duo Condado en la que indicó que discrepaba de su interpretación jurídica, pues entendía que se había convertido miembro tras la firma del MIPA. (Énfasis y citas omitidas).[5]

El foro sentenciador determinó que no se logró probar que CHO es miembro de Duo Condado. Razonó que según el *Limited Liability Company Agreement* de Duo Condado, el proceso de notificación y de admisión de un nuevo miembro está plasmado en

---

[5] Apéndice del recurso, págs. 487-497.

la Sección 12.6 del referido acuerdo y que este requiere de manera expresa, el consentimiento escrito de todos los miembros de la entidad, en este caso Paulson PRV. Determinó que CHO adquirió de CHI el siete punto quinientos noventa y ocho por ciento (7.598%) de interés de membresía respecto a Duo Condado por la cantidad de siete millones de dólares ($7,000,000.00). No obstante, el foro *a quo* concluyó que no surgió de la prueba presentada que Paulson PRV hubiese consentido por escrito y que hubiese enmendado el acuerdo operacional de Duo Condado para admitir a CHO como miembro, conforme lo requiere la Sección 12.6 del *Limited Liability Company Agreement* de la referida entidad. Debido a que no se cumplieron con los requisitos necesarios para la admisión de CHO como miembro de Duo Condado, el foro primario determinó que no se justificaba ordenar que CHO tuviera acceso a inspeccionar los libros y registros corporativos de la entidad Duo Condado.

En desacuerdo, el 24 de mayo de 2024, CHO presentó una *Solicitud de Reconsideración y de Determinaciones Adicionales de Hechos*.[6] Por su parte, el mismo día, Duo Condado, Cedeño Paulson y Padua sometieron una *Moción Solicitando Enmiendas a Tres Determinaciones de Hechos de la Sentencia*.[7] De igual forma, el 10 de junio de 2024, Duo Condado, Cedeño Paulson y Padua presentaron su *Oposición a "Solicitud de Reconsideración y de Determinaciones Adicionales de Hechos"*.[8]

Así las cosas, el 13 de junio de 2024, el Tribunal de Primera Instancia emitió una *Resolución* en la cual declaró No Ha Lugar las referidas solicitudes.[9]

---

[6] Apéndice del recurso, págs. 519-540.
[7] Íd., págs. 541-545.
[8] Íd., págs. 546-570.
[9] Íd., pág. 571.

Inconforme, el 15 de julio de 2024, la parte apelante acudió ante esta Curia mediante el recurso de epígrafe y señaló los siguientes errores:

ERRÓ EL TPI AL DETERMINAR QUE NO SE DEMOSTRÓ QUE EL SR. JOHN PAULSON ERA REPRESENTANTE AUTORIZADO DE PAULSON PRV.

ERRÓ EL TPI AL DETERMINAR QUE NO SE PRESENTÓ PRUEBA FEHACIENTE QUE DEMUESTRE QUE PAULSON PRV CONSINTIÓ POR ESCRITO A LA ADMISIÓN DE CONDADO HOTEL COMO MIEMBRO DE DUO.

ERRÓ EL TPI AL DETERMINAR QUE NO SE CUMPLIÓ CON EL REQUISITO DE QUE PAULSON PRV TENÍA QUE ENMENDAR EL ACUERDO OPERACIONAL DE DUO.

ERRÓ EL TPI AL DETERMINAR QUE CHI CONTINUABA SIENDO MIEMBRO DE DUO.

ERRÓ EL TPI AL NO RECONOCER QUE EL INTERÉS DE MEMBRESÍA ADQUIRIDO POR CONDADO HOTEL LE DA EL DERECHO A TENER ACCESO A LOS LIBROS DE DICHA ENTIDAD.

Presentada la transcripción de la prueba oral estipulada, el 22 de octubre de 2024, la parte apelante sometió su *Alegato Suplementario a la Apelación.* Por su parte, el 21 de noviembre de 2024, la parte apelada compareció mediante *Alegato de la Parte Apelada en Oposición a Apelación.*

Con el beneficio de la comparecencia de las partes, así como con la transcripción estipulada de la prueba oral, procedemos a resolver.

**II**

**A**

Las Compañías de Responsabilidad Limitada (CRL) son entidades no incorporadas, formadas bajo el Capítulo 19 de la Ley General de Corporaciones, Ley Núm. 164-2009, según enmendada, 14 LPRA sec. 3951 *et seq.* (Ley de Corporaciones), en la cuales sus miembros y administradores no ostentan responsabilidad personal por las obligaciones que posean las empresas. C. Díaz Olivo,

*Corporaciones Tratado Sobre Derecho Corporativo*, 2da ed. rev., Ed. AlmaForte, 2022, sec. 2.08, pág. 60. El tratadista Carlos Díaz Olivo ha expresado que la relación entre los miembros y la gerencia están reguladas primordialmente por el acuerdo realizado entre ellos y, en su ausencia, por las disposiciones de la Ley de Corporaciones.

En el inciso (g) del Artículo 19.01 de la Ley de Corporaciones, 14 LPRA sec. 3951, se define lo que es el contrato de la compañía de responsabilidad limitada. En particular, dicho artículo establece que:

> [...]
>
> Significa aquel contrato escrito (sea llamado contrato de compañía de responsabilidad limitada, **contrato operacional**, o de cualquier otra forma), adoptado por los miembros de una compañía de responsabilidad limitada para **regir los asuntos internos y administración de la compañía de responsabilidad limitada**. Un contrato de compañía de responsabilidad limitada será válido aun cuando la compañía de responsabilidad limitada tenga un solo miembro. Un contrato de compañía de responsabilidad limitada podrá proveer derechos a cualquier persona, incluyendo una persona que no sea parte del contrato de compañía de responsabilidad limitada, según dispuesto en dicho contrato. Un contrato de compañía de responsabilidad limitada escrito, un contrato escrito o cualquier otro escrito:
>
> (1) **Puede proveer que una persona será admitida como miembro de una compañía de responsabilidad limitada, o se convertirá en un cesionario de un interés u otros derechos o poderes de un miembro de una compañía de responsabilidad limitada, según dispuesto en dicho contrato, y estará obligado por el contrato de compañía de responsabilidad limitada si:**
>
>> **(A) Esa persona** (o un representante autorizado verbalmente, por escrito o de otra forma, como por ejemplo mediante el pago por un interés en una compañía de responsabilidad limitada) **subscribe el contrato de compañía de responsabilidad limitada o cualquier otra evidencia escrita de la intención de esa persona de convertirse en un miembro o cesionario, o**
>> **(B) sin necesidad de firmar documento alguno, si esa persona** (o un representante autorizado verbalmente, por escrito o de otra forma, como por ejemplo mediante el pago por un interés en una compañía de responsabilidad limitada) **cumple con las condiciones para convertirse**

> **en un miembro o cesionario, según dispuesto en el contrato de compañía de responsabilidad limitada o en cualquier otro escrito**, y
>
> (2) será válido aunque no haya sido firmado por la persona que está siendo admitida como miembro o convirtiéndose en un cesionario, según dispuesto en la cláusula (1) de este inciso, o por razón de haber sido firmado por un representante, según dispuesto en este subtítulo. (Énfasis nuestro).
>
> [...]

Por otro lado, en el Artículo 19.18 la Ley de Corporaciones, 14 LPRA sec. 3968, dispone el proceso de admisión de miembros en una compañía de responsabilidad limitada. Cuando la admisión ocurre en la formación de la aludida compañía, el estatuto establece que una persona puede ser admitida como miembro al ocurrir lo último de:

> (1) La formación de la [compañía de responsabilidad limitada] o
>
> (2) la fecha dispuesta y en cumplimiento con el [contrato de la compañía de responsabilidad limitada], y en caso de que el [contrato de la compañía de responsabilidad limitada] no disponga nada al efecto, al momento en que los récords de la [compañía de responsabilidad limitada] reflejan la admisión de la persona. *Íd.*
>
> [...]

No obstante, cuando la admisión de la persona como miembro ocurre luego de la formación de la compañía de responsabilidad limitada, el estatuto establece varias formas para hacerlo, entre ellas:

> (1) En el caso de una persona que no es un cesionario de un interés en una [compañía de responsabilidad limitada], **incluyendo una persona adquiriendo un interés en una [compañía de responsabilidad limitada] directamente de la [compañía de responsabilidad limitada]** y una persona a ser admitida como miembro de una [compañía de responsabilidad limitada] sin adquirir un interés en una [compañía de responsabilidad limitada] en la [compañía de responsabilidad limitada], en la fecha dispuesta y **en cumplimiento con el [contrato de la compañía de responsabilidad limitada] o si el [contrato de la compañía de responsabilidad limitada] no dispone nada a los efectos, mediante el consentimiento de todos los miembros y cuando la admisión del**

**miembro se refleje en los récords de la [compañía de responsabilidad limitada]**;

(2) en el caso de un cesionario de un interés en una [compañía de responsabilidad limitada], según dispuesto en la sec. 3995(a) de este título y en la fecha y en cumplimiento con el [contrato de la compañía de responsabilidad limitada] o si el [contrato de la compañía de responsabilidad limitada] no dispone nada al efecto, al momento en que la admisión de dicho miembro se refleje en los récords de la [compañía de responsabilidad limitada], o

(3) excepto que otra cosa se disponga en un contrato de fusión o consolidación, en el caso de una persona adquiriendo un interés en una [compañía de responsabilidad limitada] de una [compañía de responsabilidad limitada] sobreviviente o resultante conforme a una fusión o consolidación aprobada conforme a lo dispuesto en este subtítulo, en la fecha provista y en cumplimiento con el [contrato de la compañía de responsabilidad limitada] de la [compañía de responsabilidad limitada] sobreviviente o resultante, en caso de alguna inconsistencia, los términos del contrato de fusión o consolidación controlarán; y en caso de una persona adquiriendo un interés en una [compañía de responsabilidad limitada] conforme una fusión o consolidación y en donde dicha compañía de responsabilidad limitada no es la [compañía de responsabilidad limitada] sobreviviente o resultante, según lo dispuesto en el [contrato de la compañía de responsabilidad limitada] de dicha [compañía de responsabilidad limitada] no sobreviviente o resultante. *Íd.* (Énfasis nuestro).

[...]

De igual forma, en el inciso (d) del Artículo 19.18 de la Ley de Corporaciones, *supra*, se establece lo siguiente:

(d) Una persona puede ser admitida como miembro de una [compañía de responsabilidad limitada] y podrá recibir un interés en una [compañía de responsabilidad limitada] sin realizar una aportación o estar obligado a hacer una aportación a la [compañía de responsabilidad limitada]. Excepto que otra cosa se disponga en el [contrato de la compañía de responsabilidad limitada], una persona podrá ser admitida como miembro de una [compañía de responsabilidad limitada]sin adquirir un interés en una [compañía de responsabilidad limitada] de la [compañía de responsabilidad limitada]. Excepto que otra cosa se disponga en el [contrato de la compañía de responsabilidad limitada], una persona puede ser admitida como miembro único de una [compañía de responsabilidad limitada] sin hacer una aportación o estar obligado a realizar una aportación en la [compañía de responsabilidad limitada] o sin adquirir un interés en una [compañía de responsabilidad limitada] en la [compañía de responsabilidad limitada].

[…]

Sobre la admisión de miembros en la compañía de responsabilidad limitada, el tratadista Díaz Olivo ha expresado que la Ley de Corporaciones de Puerto Rico, *supra*, no impone ningún requisito para la admisión de personas como miembros de una compañía de responsabilidad limitada, por lo que esta puede ocurrir mediante un procedimiento dispuesto en el contrato de la entidad. Díaz Olivo, *op. cit.*, pág. 601. De no existir alguna disposición en el contrato de la compañía de responsabilidad limitada que regule el proceso mediante el cual una persona puede convertirse en miembro, el profesor Díaz Olivo señala que será necesario contar con el consentimiento de todos los miembros de la compañía. *Íd.*

La admisión de un cesionario como miembro de la compañía de responsabilidad limitada queda sujeta a recibir la aprobación de todos los miembros de la compañía y al cumplir con el procedimiento que establece el contrato de esta para dicho fin. Artículo 19.45 de la Ley de Corporaciones, 14 LPRA sec. 3995. En ese sentido, el inciso (b) del Artículo 19.45 de la Ley de Corporaciones, *supra*, expresamente dispone el efecto que conlleva la admisión de un cesionario como miembro. En específico, dicho artículo reza como sigue:

> Un cesionario que se ha convertido en un miembro tiene, en la medida transferida, los derechos y poderes, y está sujeto a las restricciones y responsabilidades, de un miembro bajo un [contrato de la compañía de responsabilidad limitada] y bajo esta Ley. No obstante lo anterior, excepto que otra cosa se disponga en el [contrato de la compañía de responsabilidad limitada], un cesionario que se convierte en un miembro, es responsable por las obligaciones del transferente de hacer aportaciones, según dispuesto en el Artículo 19.31, pero no será responsable por las obligaciones del transferente bajo el Capítulo VI de esta Ley. Sin embargo, el cesionario no estará obligado por las deudas, incluyendo las obligaciones del transmitente de hacer aportaciones, según dispuesto en el Artículo 19.31 de esta Ley, que no eran conocidas al cesionario a la fecha en que el cesionario se convirtió en un miembro y que no podían identificarse del [contrato de la compañía de responsabilidad limitada].

El tratadista Díaz Olivo ha explicado que el cesionario del interés de un miembro, que no ha sido admitido como miembro formalmente en la compañía, no tendrá derecho a participar en la administración y asuntos de la compañía, a menos que este obtenga la aprobación unánime de los miembros que no participaron de la transacción o se observe el procedimiento establecido en el contrato de la compañía de responsabilidad limitada. Díaz Olivo, *op. cit.*, pág. 603. Esto es así, pues si en el contrato de la compañía de responsabilidad limitada no se establece que el cesionario de un interés adquiere automáticamente la membresía en la aludida compañía, el cesionario solo sucederá al cedente en todo aquello que respecta sus derechos económicos, lo cual no incluye derecho a participar en la administración de la compañía o adquirir información de esta. *Íd.*, pág. 601.

**B**

El Artículo 19.20 de la Ley de Corporaciones, 14 LPRA sec. 3970, dispone que cualquier miembro que posea un interés que esté razonablemente relacionado con su interés como miembro de la compañía de responsabilidad limitada puede solicitar y obtener el acceso a la información de la empresa. Díaz Olivo, *op. cit.*, pág. 596. De igual forma, los administradores de una compañía de responsabilidad limitada podrán solicitar el acceso a la información de la compañía solo si es para fines que sean razonablemente relacionados con su posición como administrador de esta. *Íd.*

Cónsono con lo anterior, el inciso (a) del Artículo 19.20 de la Ley de Corporaciones, 14 LPRA sec. 3970, establece que:

> (a) Cada miembro de una [compañía de responsabilidad limitada] tiene derecho, sujeto a normas de razonabilidad (incluyendo prácticas que regulen qué información y documentos serán provistos en qué momento y lugar y a costa de quién), que puedan ser dispuestas en un [contrato de la compañía de responsabilidad limitada] o de otra forma establecidas por el administrador o si no hay un administrador, entonces por los miembros, a recibir de la [compañía de

responsabilidad limitada], de tiempo en tiempo, ante solicitud razonable, para cualquier propósito razonablemente relacionado a los intereses del miembro como miembro en la [compañía de responsabilidad limitada]:

> (1) Información completa y correcta relacionada al estado de los negocios y condición financiera de la [compañía de responsabilidad limitada];

> (2) oportunamente después de estar disponible, una copia de las planillas de contribución sobre ingresos federales, estatales y locales para cada año;

> (3) una lista actualizada del nombre y última dirección conocida del negocio, residencial y postal de cada uno de los miembros y administradores;

> (4) una copia de cualquier [contrato de la compañía de responsabilidad limitada] escrito y certificado de organización y de cualesquiera enmiendas a los mismos, junto con copias otorgadas de cualquier poder escrito, conforme al cual el [contrato de la compañía de responsabilidad limitada] y cualquier certificado y cualesquiera enmiendas a [e]stos hayan sido otorgadas;

> (5) información completa y correcta relacionada con la cantidad de efectivo y una descripción y declaración del valor acordado de cualquier propiedad o servicios aportados por cada miembro y que cada miembro ha acordado aportar en el futuro, y la fecha en que cada cual se ha convertido en miembro, y

> (6) otra información relacionada con los asuntos de la [compañía de responsabilidad limitada] que sea justa y razonable.

Del mismo modo, dicho artículo dispone en su inciso (c) que:

(c) El administrador de una [compañía de responsabilidad limitada]tendrá derecho a mantener confidencial de los miembros, por aquel periodo de tiempo que el administrador considere razonable, cualquier información que el administrador razonablemente entienda que es información de negocios u otra información cuya diseminación el administrador cree de buena fe que no es en los mejores intereses de la [compañía de responsabilidad limitada] o podría perjudicar la [compañía de responsabilidad limitada] o sus negocios o que la [compañía de responsabilidad limitada] está requerida por ley o contrato con un tercero a mantener confidencial.

Sobre el procedimiento ante el tribunal, el inciso (f) del Artículo 19.20 de la Ley de Corporaciones, *supra*, establece que:

(f) Cualquier causa de acción para ejercer algún derecho que se origine de esta sección será presentada ante el Tribunal de Primera Instancia. Si la [compañía de responsabilidad limitada] se niega a permitir a un miembro obtener o a un administrador examinar la información descrita en el inciso (a)(3) de esta sección o no contesta a la solicitud dentro de los cinco (5) días de que la misma es presentada, el miembro solicitante o administrador podrá solicitar al Tribunal de Primera Instancia que emita una orden obligando la entrega de dicha documentación. Se le concede al Tribunal de Primera Instancia jurisdicción exclusiva para determinar si la persona solicitando dicha información tiene o no derecho a la información solicitada. El tribunal podrá ordenar sumariamente a la [compañía de responsabilidad limitada] que permita al miembro solicitante obtener o al administrador examinar la información descrita en el inciso (a)(3) de esta sección y a preparar copias o abstractos de los mismos, o podrá el tribunal, sumariamente, ordenar a la [compañía de responsabilidad limitada] a proveer al miembro o administrador solicitante la información descrita en el inciso (a)(3) de esta sección bajo la condición de que el miembro o administrador solicitante pague primero a la [compañía de responsabilidad limitada] el costo razonable de obtener y proveer la información, y bajo aquellas otras condiciones que el tribunal entienda apropiadas. Cuando un miembro solicitante de o un administrador que desea examinar la información descrita en el inciso (a)(3) de esta sección, el miembro o administrador solicitante deberá establecer:

> (1) Que el miembro o administrador solicitante ha cumplido con las disposiciones de esta sección relacionadas con la forma y manera de hacer la solicitud para obtener o examinar dicha información, y

> (2) que la información que el miembro o administrador está solicitando está razonablemente relacionada con la posición del miembro como miembro o la del administrador como administrador, según sea el caso.

El tribunal podrá en su discreción, disponer cualesquiera limitaciones o condiciones con relación a la obtención y examen de información o conceder cualquier otro remedio o remedio adicional que el tribunal entienda justo y apropiado. El tribunal podrá ordenar que se traigan y mantengan en Puerto Rico aquellos libros, documentos y récords, extractos pertinentes de [e]stos o copias de [e]stos debidamente autenticados bajo aquellos términos y condiciones que pueda disponer.

**C**

Sabido es que este Tribunal Apelativo actúa, esencialmente, como foro revisor. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750,

770 (2013). Es por ello que, nuestra encomienda principal es examinar cómo los tribunales inferiores aplican el Derecho a los hechos particulares de cada caso. *Íd.* Cónsono con lo anterior, el desempeño de nuestra función revisora se fundamenta en que el Tribunal de Primera Instancia desarrolle un expediente completo que incluya los hechos que haya determinado ciertos a partir de la prueba que se le presentó. *Íd.* Es decir, nuestra función de aplicar y pautar el Derecho requiere saber cuáles son los hechos, tarea que corresponde, primeramente, al foro de instancia. *Íd.* Como foro apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos. *Íd.* Esa es la función de los tribunales de primera instancia. *Íd.*

Por el contrario, al momento de analizar prueba documental, prueba pericial o testimonios de testigos ofrecidos mediante declaraciones escritas, estamos en la misma posición que el Tribunal de Primera Instancia. *Ortiz et al. v. S.L.G. Meaux,* 156 DPR 488, 495 (2002). Así, "el Tribunal Apelativo tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta". *Santiago Ortiz v. Real Legacy et al.,* 206 DPR 194, 219 (2021), citando a *González Hernández v. González Hernández,* 181 DPR 746, 777 (2011). Asimismo, es norma básica que las conclusiones de derecho son revisables en su totalidad por el foro apelativo. *Dávila Nieves v. Meléndez Marín,* supra, pág. 770. Ahora bien, como norma general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los tribunales inferiores, así como su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. *Íd.,* pág. 771.

En nuestro ordenamiento jurídico no se favorece la intervención de los foros apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Sucn. Mena Pamias et al. v. Meléndez et al.*, 212 DPR 758 (2023); *Pueblo v. Hernández Doble*, 210 DPR 850 (2022); *Santiago Ortiz v. Real Legacy et al.*, supra. Ello, debido a que el foro de instancia está en mejor posición que un tribunal apelativo para llevar a cabo esta importante tarea judicial. *Dávila Nieves v. Meléndez Marín*, supra, pág. 771.

En consideración a la norma de corrección que cobija a las determinaciones realizadas por el Tribunal de Primera Instancia, cuando una parte peticionaria señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que esta ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario. Ello se logra utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición narrativa. *Pueblo v. Pérez Delgado*, 211 DPR 654 (2023). Los tribunales de mayor jerarquía no pueden cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de estos mecanismos, la prueba que tuvo ante sí el foro primario. *Íd.*

Esbozada la norma jurídica, procedemos a aplicarla al recurso antes nos.

**III**

Como primer señalamiento de error, la parte apelante nos plantea que erró el foro sentenciador al determinar que no quedó demostrado que John Paulson era representante autorizado de Paulson PRV, pues arguye que, según la prueba presentada por estos quedó evidenciado que lo era.

El Tribunal de Primera Instancia, en la nota al calce número 56 de la *Sentencia*, expresó lo siguiente:

> En ese sentido, se debe tener presente el principio de derecho corporativo conforme al cual la corporación o compañía es una persona distinta e independiente de sus accionistas o dueños. Véase, por ejemplo, DACO v. Alturas Fl. Dev. Corp. y otro, 132 DPR 905, 924 (1993); Díaz Aponte v. Comunidad San José, Inc., 130 DPR 782, 797-798 (1992); Fleming v. Toa Alta Development Corp., 96 D.P.R. 240, 243 (1968). Por tanto, **aun considerando que el señor Ghaffar y el señor Paulson sostuvieron conversaciones por correo electrónico en la que este último lo motivó a comprar los derechos de participación o intereses de membresía ("membership interests") de CHI en Duo Condado, no se estableció mediante la preponderancia de la prueba que tales expresiones fueron realizadas formalmente por el señor Paulson en su capacidad de representante autorizado de Paulson PRV, como Managing Member de Duo Condado. En todo caso, tampoco surge de tales comunicaciones que el señor Paulson o Paulson PRV en efecto hubiesen consentido a la admisión de Condado Hotel Owners como miembro de Duo Condado.**[10] (Énfasis nuestro).

En síntesis, el foro sentenciador, tomando en consideración las comunicaciones realizadas por vía de correo electrónico entre John Paulson y Ghaffar del 11 de noviembre de 2020[11], en la cual conversan sobre la potencial compra de los intereses de la membresía o participación de CHI en Duo Condado por la parte apelante, expresó que no quedó sustentado que John Paulson realizó dichas comunicaciones con Ghaffar en capacidad de representante autorizado de Paulson PRV y como *Managing Member* de Duo Condado.

Un análisis minucioso de la prueba presentada y el expediente que obra en autos, nos lleva a colegir que John Paulson es un representante autorizado de Paulson PRV conforme el *Consent* emitido por *Paulson Management IV LLC*. [12]

No obstante, no surge de las comunicaciones llevadas a cabo entre John Paulson y Ghaffar el 11 de noviembre de 2020, que John

---

[10] Véase, Apéndice del recurso, pág. 516.
[11] Íd., págs. 515-516; 691-692.
[12] Íd., págs. 998-999.

Paulson estuviese realizando dicha conversación en capacidad de representante autorizado de Paulson PRV y mucho menos como *Managing Member* de Duo Condado.[13] Del mismo modo, estas comunicaciones no nos llevan a colegir que John Paulson, en capacidad de representante autorizado de Paulson PRV y como *Managing Member* de Duo Condado, hubiese autorizado la admisión de la parte apelante como miembro de la entidad Duo Condado. Por tal razón, no erró el foro sentenciador al expresar que en el contexto de las comunicaciones llevadas a cabo entre John Paulson y Ghaffar, no quedó establecido que John Paulson hubiese hecho expresiones en capacidad de representante autorizado de Paulson PRV, y como Managing Member de Duo Condado.

En su segundo señalamiento de error, la parte apelante sostiene que el foro primario erró al determinar que no se presentó prueba fehaciente que demostrara que Paulson PRV consintió por escrito a la admisión de CHO como miembro de Duo Condado. De otro lado, en el tercer error señalado, arguye que el foro sentenciador incidió al determinar que no se cumplió con el requisito de que Paulson PRV tenía que enmendar el acuerdo operacional de Duo Condado. No le asiste razón. Nos explicamos.

Según esbozamos, la Ley de Corporaciones, *supra,* no impone algún requisito para la admisión de un miembro a una compañía de responsabilidad limitada. Sobre este particular, el tratadista Carlos Díaz Olivo ha expresado que la admisión puede ocurrir mediante un procedimiento dispuesto en el contrato de la entidad.[14] De no existir alguna disposición en el contrato de la compañía de responsabilidad limitada que regule el proceso mediante el cual una persona puede convertirse en miembro, será necesario contar con el consentimiento

---

[13] Apéndice del recurso, págs. 691-692.
[14] Véase, Díaz Olivo, *op. cit.,* pág. 601; Artículo 19.18 de la *Ley de Corporaciones, supra.*

de todos los miembros de la compañía.[15] Conforme el Artículo 19.45 de la Ley de Corporaciones de Puerto Rico, *supra*, la admisión de un cesionario como miembro de la compañía de responsabilidad limitada queda sujeta a recibir la aprobación de todos los miembros de la compañía y cumplir con el procedimiento que establece el contrato de compañía de responsabilidad limitada para dicho fin. Esto debe ser así, pues si en el contrato de la compañía de responsabilidad limitada no se establece que el cesionario de un interés adquiere automáticamente la membresía en la aludida compañía, el cesionario solo sucederá al cedente en lo que respecta a sus derechos económicos. Esto no incluye el derecho a participar en la administración de la compañía o a exigir información sobre sus operaciones.

En el caso ante nuestra consideración surge, del *Limited Liability Company Agreement of Duo Condado Holdings, LLC* con fecha del 10 de marzo de 2014, que los únicos miembros de Duo Condado eran Paulson PRV, quien a su vez es el *Managing Member,* y CHI.[16] En la Sección 2.5 del *Limited Liability Company Agreement* de Duo Condado, se hace referencia a la admisión de un miembro a la entidad de la siguiente manera: "[a]dditional Members may be admitted at such time and upon such terms and conditions as may be determined by the written consent of the Members pursuant to Article 12".[17] Por otro lado, la Sección 12.5, inciso (b) regula la figura de los cesionarios. En particular, dicha sección establece que aquel miembro que transfiere o cede la totalidad de su participación como miembro de la compañía dejará de ser miembro. Ahora bien, la citada sección dispone, a modo de excepción que, a menos y hasta que el miembro sustituto sea admitido como miembro de la

---

[15] Véase, Díaz Olivo, *op. cit.*, pág. 601; Artículo 19.18 de la Ley de Corporaciones, *supra.*

[16] Véase, Apéndice del recurso, pág. 589, Sección 2.5.

[17] Íd., pág. 589, Sección 2.5.

compañía, "such assigning Member shall retain the statutory rights de los assignor of a Member's interest under the Act".[18] Finalmente, la Sección 12.6 establece el procedimiento de cómo se sustituirán los miembros; y establece lo siguiente:

> Except as set forth in Section 12.1, **only upon the unanimous written consent of all of the Members shall a purchaser assignee, transferee, or other recipient of a Membership Interest who was not previously admitted to the Company as a Member be admitted as a substituted Member to the extent of its acquired interest in the Company**. In the event that any such Person is admitted to the Company as a substituted Member**, the Managing Member shall have the power and authority to amend this Agreement to reflect the admission of such Person as a substituted Member and such Person shall have all the rights, duties and obligations of a Member under this Agreement**. The Managing Member shall promptly deliver to each Member (in any permissible manner futher described in Section 17.1) a copy of any amendments to this Agreement made by the Managing Member under this Section 12.6.[19] (énfasis suplido)

Es decir, conforme al *Limited Liability Company Agreement* de Duo Condado, para admitir un nuevo miembro es necesario que exista el consentimiento escrito de Paulson PRV y CHI y que el *Managing Member*, Paulson PRV, enmiende el *Limited Liability Company Agreement*.

En el caso ante nos, la parte apelante nos plantea, que el 1 de enero de 2021 adquirió de CHI su *Membership Interest* de siete punto quinientos noventa y ocho por ciento (7.598%) en Duo Condado mediante el *Membership Interest Purchase Agreement*.[20] En el referido negocio jurídico, CHI, la parte apelante y Duo Condado (firmado por Ghaffar), pactaron que luego de la compra del *Membership Interest* de CHI en Duo Condado por la parte apelante, CHI cesaría de ser miembro de Duo Condado.[21] Como únicos

---

[18] Véase, Apéndice del recurso, pág. 610, Sección 12.5 (b).
[19] Íd., pág. 610, Sección 12.6.
[20] Íd., págs., 750-759.
[21] Íd. pág. 751.

comparecientes de dicho negocio jurídico, se encuentran Duo Condado (firmado por Ghaffar), la parte apelante y CHI.[22]

Tomando en consideración lo antes expuesto, queda meridianamente claro que al revisar el *Limited Liability Company Agreement* de Duo Condado y el *Membership Interest Purchase Agreement* realizado por la parte apelante, CHI y Duo Condado (firmado por Ghaffar), Paulson PRV como miembro y *Managing Member* de Duo Condado no ha consentido a la admisión de la parte apelante como miembro de la compañía Duo Condado, según requerido en la Sección 12.6 del *Limited Liability Company Agreement* de la entidad. Tampoco surge del *Membership Interest Purchase Agreement* que Paulson PRV hubiese comparecido al mismo para consentir a la admisión de la parte apelante como miembro de Duo Condado, según lo dispuesto en el acuerdo en cuestión. Del mismo modo, tampoco surge de algún otro documento del expediente que Paulson PRV, como *Managing Member* de Duo Condado, hubiese consentido a la admisión de la parte apelante como miembro de Duo Condado, e incluso que hubiese enmendado el *Limited Liability Company Agreement* de la entidad para admitir a la parte apelante como miembro oficial de Duo Condado. Debido a que el *Limited Liability Company Agreement* es el documento angular mediante el cual se detalla el procedimiento de admisión para un miembro en la entidad Duo Condado, el no cumplir con sus requisitos, especialmente el establecido en la citada Sección 12.6, sobre que los miembros debían consentir a la admisión y que Paulson PRV debía enmendar el *Limited Liability Company Agreement* de Duo Condado, nos impide concluir algo contrario a lo resuelto por el foro primario, es decir, que la parte apelante no advino miembro de Duo Condado.

---

[22] Apéndice del recurso, págs. 757-758.

En su cuarto señalamiento de error, la parte apelante alega que el foro de origen erró al determinar que CHI continuaba siendo miembro de Duo Condado. El *Limited Liability Company Agreement* de Duo Condado establece en su Sección 12.2 lo siguiente referente a la redención obligatoria del interés de membresía de CHI:

> Th Company shall be required, without the necessity of any Member approval, to redeem all of the Membership Interests of CHI if the La Concha Management Agreement and the Vanderbilt Management Agreement are terminated, in accordance with Section 6.1 of each such agreement. The total redemption price for all of CHI's Membership Interests shall be the aggregate sum of equal to $7,000,000.00, payable in cash on the closing date. The Company Shall have the right to deduct from theredemption price of the CHI Membership Interest any amount owed by the CHI to the Company. Upon payment of such redemption price, CHI shall cease to be a Member of the Company and its Membership Interests shall be cancelled. Such mandatory redemption shall be funded from funds available to the Company. Upon such redemption, CHI shall not have the right to receive any Distributions from the Company, The closing of such redemption of the CHI Membership Interest shall be held on the earliest practicable time on a date to be agreed upon by the Company and CHI (the "Closing date"). On the Closing Date CHI shall be required to tender to the Company all of its Membership Interests pursuant to this Section 12.2.[23]

Por otro lado, una lectura de la Sección 12.5 del *Limited Liability Company Agreement* de Duo Condado en su inciso (b) nos deja claro que "Any Member who transfers or assigns its entire Membership Interest in the Company shall cease to be a Member, **except that, unless and until a substituted Member has been admitted into the Company, such assigning Member shall retain the statutory rights of the assignor of a Member's interest under the Act**".

Si bien es cierto que la parte apelante adquirió de CHI un *Membership Interest* de siete punto quinientos noventa y ocho por ciento (7.598%) en Duo Condado, también es cierto que no ocurrieron los eventos subsiguientes necesarios para que la parte

---

[23] Apéndice del recurso, pág., 609.

apelante pudiese ser considerada miembro de Duo Condado, según el *Limited Liability Company Agreement* de la entidad.

Este cuadro fáctico nos lleva a colegir que, si bien la parte apelante pagó la cantidad de siete millones de dólares ($7,000,000.00) a CHI, adquiriendo así un *Membership Interest*, no erró el foro sentenciador al determinar que CHI continuaba sus derechos estatutarios como miembro de Duo Condado[24], pues según la Sección 12.5 del *Limited Liability Company Agreement* de Duo Condado en su inciso (b), CHI dejará de ser miembro de Duo Condado, excepto que, a menos y hasta que la parte apelante sea admitida como miembro de la compañía. Por lo que CHI retuvo sus derechos estatutarios como miembro de Duo Condado, aún después del *Membership Interest Purchase Agreement*, realizado entre esta y la parte apelante, hasta tanto la parte apelante sea admitida como miembro en Duo Condado.[25]

Finalmente, en su quinto error señalado, argumenta que el foro *a quo* incidió al no reconocer que el interés de membresía adquirido por CHO le daba derecho a tener acceso a los libros de Duo Condado.

Según esbozamos, el Artículo 19.20 de la Ley de Corporaciones, *supra*, permite que todo miembro que posea un interés que esté razonablemente relacionado con su interés como miembro de la compañía de responsabilidad limitada, pueda solicitar mediante el procedimiento de *injuction* estatutario el acceso a la información de la empresa.[26] De igual forma, el mencionado artículo permite que los administradores de una compañía de responsabilidad limitada puedan solicitar el acceso a la información

---

[24] Apéndice del recurso, págs., 516-517.
[25] Íd.
[26] Véase, Díaz Olivo, *op. cit.*, pág. 596.

de la compañía solo si es para fines que sean razonablemente relacionados con su posición como administrador de esta.

En el caso ante nuestra consideración, si bien es cierto que la parte apelante adquirió de CHI un *Membership Interest* mediante el *Membership Interest Purchase Agreement,* también es cierto que la parte apelante nunca advino a ser miembro de la entidad Duo Condado, conforme el procedimiento expresado en el acuerdo operacional de Duo Condado. Debido a que la parte apelante no fue admitida como miembro de Duo Condado y al no ser administradora de la entidad Duo Condado, la parte apelante no tiene derecho a que se le autorice a inspeccionar los libros y registros corporativos de Duo Condado, conforme al *Limited Liability Company Agreement* de Duo Condado. Por lo que no erró el foro primario al no reconocer que el interés de membresía adquirido por la parte apelante le daba derecho a tener acceso a los libros de Duo Condado.

**IV**

Por las razones que anteceden, confirmamos el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones